## Case No. 16,858.

### Ex parte VAN HOVEN.

[4 Dill. 411;¹ 22 Int. Rev. Rec. 217; 3 Cent. Law J. 366; 1 Cin. Law Bul. 178.]

Circuit Court, D. Minnesota. April, 1876.

JURISDICTION IN MATTER OF EXTRADITION—TREATY WITH BELGIUM—COMPLAINT—WARRANT.

1. The sixth article of the treaty of May 1st, 1874 [18 Stat. 804], between the United States and Belgium, expressly provides for requisition on the part of the government applying, and consent of the government applied to. It is not necessary that the warrant on such req-

¹ [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

uisition be issued by the president. It is sufficient if it issue from the state department, under its official seal. In foreign relations, and executive acts imposed by treaty stipulations, the president acts through that department.

[Cited in Castro v. De Uriarte, 16 Fed. 97.]

2. Where the complaint charges the crime of forgery as having been committed on a certain day in the jurisdiction of the foreign government, in that one "willfully, etc., uttered and put in circulation forged or counterfeit papers, or obligations, or other titles, or instruments of credits," without specifying the kind of obligations forged, or the character of the papers, or nature of titles, etc., it is defective at common law, does not fairly inform accused of the charge, and does not show probable cause for arrest.

[This was a petition by Henry Van Hoven for a writ of habeas corpus.]

C. K. Davis, for the petitioner.
John Y. Page, contra.

NELSON, District Judge. The counsel for the petitioner, upon the argument of the demurrer, has presented, and urged with great ability, objections to the proceedings instituted by the Belgian government to obtain the extradition, which may be reduced to two in number: 1. That the commissioner had no jurisdiction, under the treaty stipulations between the two countries, to issue any warrant for the arrest and examination of persons charged with the commission of forgery, with a view to their extradition. 2. That the complaint upon which the warrant was issued by the commissioner does not make out a case or contain such a statement of the offence as would justify a warrant of arrest.

I shall take up the first objection, and, with a view of stripping the case of some questions that were presented on the argument, state that, in my opinion, the judicial arm of the government is powerless to arrest any alleged fugitive from justice whose extradition is demanded by a foreign government under any treaty with the United States, without a requisition having been previously made by the foreign government upon the United States, and its authority obtained to apprehend such fugitive. The sixth article of the treaty proclaimed May 1, 1874, between the United States and Belgium, provides expressly for such requisition and consent to the arrest on the part of the government applied to.

Has such requisition been made and consent been obtained? The mandate or warrant issued by the department of state recites the fact that such requisition was made by the proper officers of the Belgian government in pursuance of the treaty, and this mandate is the only evidence that the president of the United States initiated the proceedings or authorized the apprehension of the prisoner.

The objection that such warrant is not issued by the president of the United States, because it emanates from the state depart-

ment, and is signed by the secretary of state and under his official seal, in my opinion is not tenable. The history of the government shows that, in all our foreign relations, the president, in performing executive acts imposed by treaty stipulations or otherwise, acts through the department of state, and under its official seal. And when, as in this case, a warrant or mandate is signed by the secretary of state, it is the act of the president through the proper executive department of the government. Thus, upon the face of the papers, which are admitted by the demurrer to be true, the requisition has been properly made by the Belgian government, and a proper warrant has been issued by the president of the United States to authorize the commissioners to act. I have no authority to go behind the warrant which has been issued by the president through the state department, and it must be taken as a fact that the president discharged his executive functions in accordance with the terms of the sixth article of the treaty.

The act of congress in relation to "extradition" (title 66, Rev. St. U. S. p. 1026) authorizes certain judicial officers, "whenever a treaty for extradition exists between the government of the United States and any foreign government, upon complaint being made, under oath, charging any person found within the limits of any state, district, or territory, who, having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, to issue his warrant for the apprehension of the person so charged, that he may be brought before such commissioner, to the end that the evidence of criminality may be heard and considered." And in case such commissioner deems the evidence sufficient to sustain the charge made, he certifies the same, together with all the testimony, to the secretary of state, that a warrant may issue for his surrender.

This act of congress applies to all treaties made before or after its passage, and was necessary, in order to give the judicial department of the government jurisdiction to investigate the charge of crime alleged to have been committed within the limits of a foreign government.

The commissioner of the circuit court of the United States for the Southern district of New York, in obedience to the warrant of the president, and upon complaint made by the consul-general of Belgium, resident in the city of New York, has issued his warrant of arrest for the purpose of investigating the charges made against the prisoner, and he had authority so to do, provided the complaint by the consul-general made out a proper case.

And this brings me to a consideration of the next and last objection. The complaint charges that Van Hoven committed, within the jurisdiction of the kingdom of Belgium, the crime of forgery, as it is specifically mentioned in the treaty of 1874, to-wit: "With having, within the jurisdiction of the kingdom of Belgium, and in violation of the laws thereof, and for his

own benefit, and on or about the 21st day of December, 1875, wilfully and knowingly and maliciously uttered and put in circulation forged papers, or counterfeit papers, or counterfeit obligations, or other titles, or instruments of credits." This is the charge in hæc verba, without specifying the kind of obligations forged, or the character of the papers, or the nature of the titles, or instruments of credits forged.

Is such a complaint sufficiently definite for the purpose of jurisdiction? It is not necessary that a complaint should be drawn with the formal precision of an indictment, but the accused should be fairly informed of the charge made, so that he may be able to meet the investigation.

In the Case of Henrich [Case No. 6,369], the court says: "The complaint upon which the warrant of arrest is asked, should set forth clearly, but briefly, the substance of the offence charged, and the substantial, material features thereof." I think, tested by the above decision, the complaint does not show probable cause for the arrest, and, at common law, is defective. The consul does not pretend to be familiar with the particulars of the alleged crime, and he has no personal knowledge of any of the facts, and states that he makes the complaint by virtue of his office, and for the purpose of giving effect to the treaty. Clearly, under our system of criminal jurisprudence, such a complaint would not authorize the arrest of one of our citizens, and it cannot have been the intention of the treaty-making power, or the congress of the United States, to have permitted the arrest of an alleged fugitive upon a complaint which would be defective in the former case. The petitioner, therefore, must be discharged from custody. Ordered accordingly.

The foregoing decision of Nelson, J., was given in April, 1876. An appeal was taken from the order of discharge, and that order was affirmed by the circuit court, at the June term, 1876. The petitioner, after the order for his discharge was made, was again arrested, and sued out another writ of habeas corpus. See [Case No. 16,859].